TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00231-CV







Willie Roy Revels, Individually and as Next Friend of Brandon Revels, Bradley Revels,
and Breon Revels; and Rev. Billy and Neldon Lindley, Appellants


v.



Novartis Pharmaceuticals Corporation f/k/a Sandoz Pharmaceuticals Corporation;

St. David's Health Care System, Inc. d/b/a St. David's Medical Center;

and Mary E. Gasal, M.D., Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 95-11076, HONORABLE PETER M. LOWRY, JUDGE PRESIDING 







 This is a wrongful death action based on medical negligence and product liability. 
Appellants, Willie Roy Revels, individually and as next friend of Brandon, Bradley, and Breon
Revels, the Reverend Billy Lindley, and Neldon Lindley, alleged that Carolyn Revels's (1) ingestion
of the drug Parlodel caused her death. The trial court granted appellees' (2) motion for summary
judgment on the ground that appellants failed to provide admissible evidence of causation to
support their causes of action. We will affirm the trial court's judgment. 


BACKGROUND

 Carolyn Revels daily ingested five milligrams of the drug Parlodel to suppress
lactation after the birth of her third son, Breon. Two weeks after Breon was born, while talking
on the telephone to her father, Mrs. Revels suffered a cardiac arrhythmia resulting in sudden
death. The medical examiner attributed Mrs. Revels's death to cardiomyopathy, an enlarged
heart, which occurred during the postpartum period. According to the medical examiner, the
precise cause of postpartum cardiomyopathy is unknown to medical science. She also found
evidence of cardiohypertrophy, which is a thickening of the heart muscle, and of sarcoidosis,
which is an immune disorder characterized by granulomas in the body's organs. The medical
examiner stated in her report that she believed Mrs. Revels's heart failure was more likely related
to the postpartum cardiomyopathy and not the sarcoidosis. 

 Appellants dispute the medical examiner's report. They believe that Mrs. Revels
suffered a Parlodel-induced coronary artery vasospasm, which caused cardiac arrhythmia, that led
to her heart failure and death. Appellants filed suit against Novartis, the manufacturer of Parlodel;
Dr. Gasal, the doctor who prescribed the drug to Mrs. Revels; and St. David's, the facility that
provided the drug to Mrs. Revels. Appellants offered seven expert witnesses to testify regarding
general causation, meaning that Parlodel could cause coronary artery vasospasm in the general
population, and regarding specific causation, meaning that Parlodel caused Mrs. Revels to suffer
a coronary artery vasospasm. See Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d
706, 714 (Tex. 1997) (explaining difference between general and specific causation).

 Appellees each filed a motion to exclude appellants' causation testimony, alleging
that the expert testimony failed to meet the admissibility requirements of Texas Rule of Evidence
702. The trial court granted appellees' motions, stating in its order: 


The methodology supporting the opinions of these experts is not sufficiently
scientifically reliable or relevant to satisfy the requirements of Texas Rule of Civil
Evidence 702 as set forth by the Texas Supreme Court in E.I. du Pont de Nemours
& Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995); and Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706 (Tex. 1997); see also Daubert
v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). 



 Appellees subsequently filed motions for summary judgment on the basis that
appellants could provide no admissible evidence to establish that Parlodel caused Mrs. Revel's
death. See Tex. R. Civ. P. 166a(i). The trial court granted the motions, rendering judgment that
appellants take nothing from any appellee. Appellants appeal the trial court's grant of summary
judgment, contending in three issues that the trial court abused its discretion by excluding their
experts' testimony regarding causation and erred by granting each appellee's motion for summary
judgment.


DISCUSSION

Standard of Review

 The decision to admit or exclude evidence rests within the sound discretion of the
trial court. See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995). 
The test for abuse of discretion is whether the trial court acted without reference to any guiding
rules or principles. See id. The Texas Supreme Court has held that the trial court acts as a
gatekeeper when it comes to the admissibility of expert testimony; the trial court's role is to make
the initial determination whether the expert's opinion is relevant and whether the methods and
research upon which it is based are reliable. See id. 

 The factors a trial court should consider in determining the admissibility of expert
evidence include, but are not limited to, the following: (1) the extent to which the theory has been
or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of
the expert; (3) whether the theory has been subjected to peer review and publication; (4) the
technique's potential rate of error; (5) whether the underlying theory or technique has been
generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses that
have been made of the theory. Id. at 557. The factors used to determine whether the proffered
evidence is sufficiently reliable differ with each case. See id. When properly considered, this
Court cannot conclude that a trial court abused its discretion, even if, in the same circumstances,
we would have ruled differently. See id. at 558. 


Appellants' Causation Evidence

 Appellants' experts opined that Parlodel could cause vasospasms in the general
population based upon their review of pharmacological actions of structurally similar compounds
and of numerous case reports associating Parlodel with adverse side effects. The experts testified
that they formed the opinion that Parlodel caused Mrs. Revels to suffer a coronary artery
vasospasm by employing a process known as differential diagnosis, that is, by reviewing her
medical records and in their opinion excluding all other possible causes of death.

 Parlodel's active ingredient is bromocriptine mesylate, a semi-synthetic ergot
alkaloid. Ergot alkaloids have the ability to cause vasospasm. In its notice of a proposal to
withdraw approval for the use of Parlodel in suppressing lactation, the Food and Drug
Administration ("FDA") noted: 


In the general population, a risk factor for hypertensive crises and spasms is
exposure to ergot alkaloids. Bromocriptine is a semi-synthetic ergot alkaloid . . .
. It is therefore possible that bromocriptine may . . . like other ergot alkaloids .
. . precipitate pregnancy-induced hypertension, or other related adverse events. 



Bromocriptine Mesylate (Parlodel) for the Prevention of Physiological Lactation; Opportunity for
a Hearing on a Proposal to Withdraw Approval of the Indication, 59 Fed. Reg. 43,347, 43,351
(1994). 

 In addition to their review of the pharmacological actions of ergot alkaloids,
appellants' experts reviewed a number of adverse events connected to the use of Parlodel that have
been reported to the FDA. Adverse event reports are spontaneous reports by health professionals
of serious problems that occur with medical products, such as drugs, once the product has been
approved by the FDA for widespread use. A physician who suspects that a medical product may
be related to a serious event may submit an adverse event report to the FDA. See Food and Drug
Administration, The Clinical Impact of Adverse Event Reporting 2 (October 1996). These
unsolicited adverse event reports contain "uncontrolled" information, as opposed to clinical trial
data, which are obtained under strictly controlled conditions. See id. at 5. The adverse events
reports related to Parlodel usage include incidents of postpartum hypertension, seizures, and
strokes. 

 In 1994, the FDA withdrew approval for the use of Parlodel for postpartum
lactation suppression. By way of explanation, the FDA noted that by 1989, it had received eighty-five serious adverse event reports associated with bromocriptine, including ten involving patient
deaths. The FDA went on to note:


The agency concluded that, although the individual ADEs [adverse drug
experiences] did not prove that bromocriptine caused hypertensive crises, seizures,
or [strokes], in the aggregate, the ADEs suggested that bromocriptine may be the
cause of these serious adverse experiences . . . . 



59 Fed. Reg. 43,347, 43,348 (1994). The FDA notice concluded that "the potential risks
associated with the use of bromocriptine for the prevention of physiological lactation outweigh its
limited benefits and bromocriptine is no longer shown to be safe for the use in preventing
physiological lactation." Id. at 43,351.

 Appellants' experts also reviewed over twenty published case reports by physicians
associating an adverse event to the ingestion of Parlodel. These reports include such adverse side
effects as hair loss, digital artery vasospasm, hypertension, and cerebral vascular accidents
(strokes) and myocardial infarctions (heart attacks) in postpartum women. The reports do not
purport to prove a causal relationship between the drug and the adverse event, but merely record
the physician's observations of a particular patient, and note the possible association between the
drug and the event. 

 Appellants point to one report of a bromocriptine challenge/re-challenge test as
direct scientific proof of causation. See F. Larrazet, et. al., Possible Bromocriptine-Induced
Myocardial Infarction, 118 Annals of Internal Medicine 199 (February 1993). In the two-page
Larrazet report, the author describes his experiment on a thirty-two year old woman taking
Parlodel to suppress lactation. The woman took a 2.5 milligram dose of Parlodel and two hours
later, "at the peak of action of bromocriptine," the physician observed a seventy percent
constriction of her right coronary artery. See id. The author noted that "[t]he mechanism by
which bromocriptine could have precipitated coronary artery spasm is not clear." Id. at 200. The
author concludes with language similar to most case reports reviewed by appellants' experts: 
"Our study suggests that bromocriptine should be considered as a possible etiologic agent causing
postpartum myocardial infarction." Id.

 Appellees objected to the reliability of appellants' general causation testimony,
arguing that a review of structurally similar compounds and of a series of individual case reports
was insufficient to satisfy the reliability test established by the Texas Supreme Court in Robinson
and Havner. They argued further that, absent reliable evidence of general causation, appellants'
experts had no basis for their opinions regarding specific causation. In other words, in order for
the experts to exclude other causes of death and conclude that Parlodel caused Mrs. Revels's
death, there must first exist some reliable theory of general causation to warrant the inclusion of
Parlodel ingestion as a possible cause of her death. 


Application of Robinson and Havner to Appellants' Causation Evidence

 In Robinson, the supreme court reviewed the trial court's decision to exclude expert
evidence, while in Havner, the court evaluated whether the expert testimony at issue was
sufficiently reliable to constitute some evidence of causation. While Havner spoke specifically to
the epidemiological evidence offered in that case, it provides some guidance for the cause before
us. In particular, the court states that case reports are not "scientifically reliable" evidence and
should be rejected as a basis on which an expert may base his or her opinion. See Havner, 953
S.W.2d at 720. The court reasons that "physicians following scientific methodology would not
examine a patient or several patients in uncontrolled settings to determine whether a particular
drug has favorable effects, nor would they rely on case reports to determine whether a substance
is harmful." See id. (citing David E. Bernstein, The Admissibility of Scientific Evidence After
Daubert v. Merrell Dow Pharmaceuticals, Inc., 15 Cardozo L. Rev. 2139, 2148-49 (1994)). 
Although appellants' experts relied on a large number of case reports associating Parlodel with
adverse experiences, the supreme court has indicated that a study of case reports alone is a
scientifically invalid manner in which to form an expert opinion:


A physician, even a treating physician, or other expert who has seen a skewed data
sample, such as one of a few infants who has a birth defect, is not in a position to
infer causation. The scientific community would not accept as methodologically
sound a "study" by such an expert reporting that the ingestion of a particular drug
by the mother caused the birth defect. 



Id. at 719-20; see also Minnesota Mining & Mfg. Co. v. Atterbury, 978 S.W.2d 183, 199 (Tex.
App.--Texarkana 1998, pet. denied) (under the supreme court's standards in Havner, published
peer-reviewed case reports probably not sufficiently reliable to support causation testimony). 

 The supreme court recognized that when the research and the expert's opinion are
formed for the purpose of litigation, this weighs against the admissibility of the expert testimony. 
See Robinson, 923 S.W.2d at 559. Here, two of appellants' experts testified that they were not
familiar with the drug Parlodel before they were asked to review Mrs. Revels's file for purposes
of this litigation. A third expert relied on several of his own case reports he prepared in
conjunction with Parlodel litigation. 

 While the case reports illustrate an association between adverse drug experiences
and Parlodel, the supreme court has clearly warned that such an association does not equate to
causation. See Havner, 953 S.W.2d at 718, 724. Most of the adverse event case reports at issue
here describe experiences other than coronary artery vasospasm, the alleged cause of Mrs.
Revels's death. Even the Larrazet challenge/re-challenge experiment, appellants' strongest
evidence of general causation, constitutes but one single, uncontrolled experiment. 

 Before Robinson and Havner, the evidence on which appellants' experts relied
might well have been adequate to bring their opinions before the jury. However, now the supreme
court has given the lower courts directives and invested the trial courts with considerable
discretion to determine admissibility of expert testimony, and we must uphold that decision if the
court properly exercised its discretion. It was within the trial court's discretion to exclude
appellants' expert testimony regarding general causation on the grounds that the basis for the
testimony was not sufficiently reliable under the Robinson test. Thus, we must hold that in the
absence of a scientifically reliable basis for a conclusion regarding general causation, the trial
court did not abuse its discretion by excluding expert testimony that Parlodel was the specific
cause of Mrs. Revels's death. See Havner, 953 S.W.2d at 720. 

 Despite the suggestion of a relationship between adverse experiences and Parlodel
usage, we are called upon only to determine whether the trial court abused its discretion in light
of the guidelines provided by our supreme court regarding the admissibility of expert witness
testimony. We may not substitute our judgment for that of the trial court, nor may we reverse the
trial court's ruling even when this Court would have ruled differently. When we compare
appellants' scientific evidence with the directives of the supreme court in Robinson and Havner,
we cannot conclude that the trial court abused its discretion by excluding appellants' causation
evidence. Because appellants presented no admissible evidence of causation, an essential element
in their claims against appellees, the trial court did not err by rendering summary judgment in
appellees' favor. Appellants' issues one, two, and three are overruled. 


CONCLUSION

 The judgment of the trial court is affirmed. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Affirmed

Filed: August 26, 1999

Do Not Publish
1. Carolyn Revels was the wife of Willie Roy Revels, the mother of Brandon, Bradley, and
Breon Revels, and the daughter of the Reverend Billy and Neldon Lindley.
2. Appellees are Novartis (f/k/a Sandoz) Pharmaceuticals Corporation ("Novartis"), St.
David's Health Care System, Inc. d/b/a St. David's Medical Center ("St. David's"), and Mary
E. Gasal, M.D. Novartis, St. David's and Dr. Gasal will be referred to collectively as
"appellees."



ientifically invalid manner in which to f